UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS AMBS,

          Plaintiff,                                Case No. 1:11-cv-332

v.                                         HON. JANET T. NEFF

SIR HOME IMPROVEMENT *et al.*,

          Defendants.

_____/

**<u>OPINION</u>**

Plaintiff Douglas Ambs filed this action on April 1, 2011 against his former employer, Sir Home Improvement ("Sir"), alleging Sir violated the Family Medical Leave Act ("FMLA"), 28 U.S.C. § 2601 *et. seq.*, in denying Plaintiff's request for leave time for the birth of his child and in terminating his employment as a sales representative. On April 14, 2011, Sir filed its Answer and a counterclaim (CC) for overpayment of commissions to Plaintiff, which was later dismissed by stipulation. On June 9, 2011, Plaintiff was granted leave to file a First Amended Complaint to add a claim of "retaliatory counterclaim," alleging that Sir's counterclaim was filed as retaliation for Plaintiff exercising his legal rights. On October 18, 2011, Plaintiff filed a Third Amended Complaint (TAC) by leave granted, adding Frank Mumford, owner of Sir, and William Scott Walkup, Plaintiff's former supervisor, as defendants (Dkt 66).

Defendants have filed a Motion for Partial Summary Judgment (Dkts 90, 91), seeking summary judgment as to Defendant Mumford and as to the claim of retaliation. Plaintiff has filed

a Response (Dkts 92-96), and Defendants have filed a Reply (Dkt 97).  Defendants' Motion is properly denied.

## I.  Underlying Facts

Sir Home Improvement is a Michigan headquartered company, located in Schoolcraft, that sells and installs windows, roofs, shutters, siding, and other home improvement products (TAC ¶ 2).  In order to sell these products, Sir provides "leads" to sales representatives to follow up on, demonstrate the products, and contract with potential customers (*id.*).  Plaintiff was employed as a sales representative for Sir from January 1, 2007 through July 9, 2010[1] (*id.* ¶ 7; Statement of Material Facts ["SMF"] ¶¶ 1, 3).  Plaintiff alleges that he requested two weeks leave time for the birth of his child, and that "Defendant" did not acknowledge his request and failed to comply with FMLA requirements regarding notice of employee rights and the grant of family medical leave.

In mid-March 2011, when Plaintiff was at the hospital with his wife for the birth of their child, "Defendant" insisted that Plaintiff follow up on a sales lead even though Plaintiff responded that he was "on leave time" with his wife for childbirth.  Plaintiff relented and followed up on one lead.  "Defendant" continued to deny Plaintiff's leave requests until eventually Plaintiff informed "Defendant" that he would not follow up on sales leads because he was taking two weeks leave under the FMLA.  "Defendant" responded by email that Plaintiff was to turn in all of his equipment and supplies, and his employment was terminated.  Plaintiff alleges that "[t]he decision" was made by Mumford and Walkup.  [TAC ¶¶ 9-18]

---

[1]Plaintiff was initially employed as a service technician.  He became a commissioned sales representative around August 2009 (SMF ¶ 2).

Defendants contend Plaintiff was terminated for reasons related to his job performance and not for requesting FMLA time off, and that when Plaintiff requested FMLA time off, he voluntarily delayed taking the time off.  Sir's counterclaim alleged that Plaintiff was overpaid $9912.32 in commissions as a result of advance draws (CC, Dkt 5, ¶ 8).

In addition to this action under the FMLA, Plaintiff, along with two other former Sir sales representatives, filed a lawsuit in state court on April 11, 2011, alleging that Sir failed to pay them commissions owed.  The state court action was not litigated by defense counsel in this case.  It has since been settled.

## II.  Legal Standard

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005).  After reviewing the whole record, the Court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## III.  Analysis

Defendants' Motion seeks partial summary judgment with respect to Defendant Mumford and with respect to the claim of "retaliatory counterclaim."  Because genuine issues of material fact exist with respect to each of these claims, summary judgment is improper.

A.  Defendant Mumford

Defendants seek summary judgment of the claims against Mumford on the grounds that he was not involved in the decision or the act of terminating Plaintiff, and therefore, he is not individually liable under the FMLA.

Defendants do not dispute that, with respect to "covered" private sector employers, the FMLA generally imposes individual liability on "'any person who acts, directly or indirectly, in the interest of the employer.'"  *See Mitchell v. Chapman,* 343 F.3d 811, 829-31, n.22 (6th Cir. 2003) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)).[2]  Defendants argue that Mumford cannot be liable because he was not involved in terminating Plaintiff's employment.  Defendants rely on deposition testimony that Walkup had the authority to terminate Plaintiff's employment and did so, and he did not consult Mumford (Walkup Dep. 104-05, 153; Mumford Dep. at 138).  They also cite to Walkup's testimony that Mumford did not make the employment decisions with respect to sales representatives (*id.* at 104-05).  They assert that "it is clear that Frank Mumford learned of the termination *after* the fact" (Defs. Reply at 2, citing Mumford Dep. at 138), and that Mumford approved two weeks off for Plaintiff (Defs. Reply at 2, citing Pl. Resp. at 5).

However, Mumford was the owner/operator of Sir, and the record is disputed concerning his role and involvement in Plaintiff's employment, the denial of FMLA leave, and Plaintiff's discharge.  Contrary to Defendants' assertions, Mumford's own testimony on these issues is equivocal.  He testified that he talked with Walkup about Plaintiff's discharge only once after Plaintiff's discharge, but couldn't remember exactly when (Mumford Dep. at 138).  Mumford was aware of Plaintiff's

---

[2]The FMLA defines "employer" to include: "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."   29 U.S.C. § 2611(4)(A)(ii)(I).

desire for leave during his wife's pregnancy, and Mumford had various conversations and communications with or about Plaintiff pertaining to his employment and leave (*see*, e.g., Mumford Dep. 117, 120, 128). Likewise, Walkup testified that he talked to Mumford about terminating Plaintiff's employment "[l]ong before" the termination (Pl. Resp. at 13-14, citing Walkup Dep. at 150).

Moreover, as Plaintiff points out, Defendants' response to Interrogatory #9 expressly identifies Mumford as part of the decision-making process that led to Plaintiff's termination—although after Mumford was added as a defendant, the defense has attempted to retreat from this position (*see* Pl. Resp. Ex D at 6). Plaintiff cites record evidence that Mumford had authority over Walkup and had the authority to grant FMLA leave, discharge Plaintiff, and overrule Walkup's decisions (Pl. SMF ¶ 5; Rudowske Dep. 37, 193-94, 202-03; Mumford Dep. at 21, 161).

There are genuine disputes of material fact concerning whether Mumford has individual liability under the circumstances presented. Summary judgment is therefore precluded.

## B. Retaliatory Counterclaim

Defendants argue that the filing of a counterclaim for the overpayment of commissions does not support a retaliation claim under the FMLA pursuant to case law, the "litigation privilege," and public policy. While this issue is a closer call, the Court is not persuaded that Defendants are entitled to summary judgment of this claim.

Defendants cite a number of cases in which the courts have declined to recognize or permit a retaliatory counterclaim to proceed where the counterclaim is not without merit and was brought in good faith. Defendants assert that they had no retaliatory motive in filing the counterclaim in this case and that the counterclaim is legitimate based on their audit of payments to Plaintiff, which

establishes an overpayment of $10,749.47 (Defs. Br. at 9). Defendants contend that the case relied on by Plaintiff, *Rosania v Taco Bell of Am., Inc.,* 303 F. Supp. 2d 878 (N.D. Ohio 2004), in which the court permitted an action for retaliatory counterclaim, was wrongly decided.

Plaintiff argues that an action for retaliatory counterclaim is recognized in a majority of jurisdictions, including courts in the Sixth Circuit, although most of this precedent involves claims brought under other discrimination statutes, such as Title VII, the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA), not the FMLA. Plaintiff also contends that the factual circumstances underlying Defendants' filing of the counterclaim support a claim for retaliation. For instance, no such counterclaim was filed by Sir in the state court action, in which the underpayment of commissions was directly at issue. Regarding the litigation privilege, Plaintiff asserts that federal courts have refused to apply absolute ligation immunity in discrimination actions and that Defendants ignore Sixth Circuit law so holding.

The courts are divided in their recognition of retaliatory counterclaims, and although many courts have permitted such claims, there appears to be no settled legal analysis to determine when a claim or counterclaim by an employer constitutes actionable retaliation. "Generally, the courts have found that a baseless counterclaim or lawsuit, motivated by a retaliatory animus, will be deemed to be actionable retaliation. The more difficult question as to whether a counterclaim or lawsuit that is not baseless, but is motivated by a retaliatory animus, can be found to be actionable retaliation is very much still a debatable proposition." ROBERT B. FITZPATRICK, *Counterclaims and Retaliation,* Current Developments in Employment Law: The Obama Years at Mid-Term, ALI-ABA Course of Study, July 28-30, 2011, ST001 ALI-ABA 1603, 1607.

In *Rosania*, the plaintiff filed an action alleging that his former employer Taco Bell violated the FMLA "by interfering with, restraining or denying Rosania his rights under the FMLA and/or by discharging him for asserting/exercising those rights." 303 F. Supp. 2d 880. Taco Bell filed its Answer, affirmative defenses, and asserted two counterclaims alleging conversion and unjust enrichment due to Rosania purportedly having received and retained excess mileage reimbursements to which he was not entitled. *Id.* Rosania subsequently moved to amend his complaint to add an allegation that the counterclaims represented unlawful retaliation under the FMLA. *Id.* The United States District Court for the Northern District of Ohio held that the employer's filing of a counterclaim was an "adverse employment action" for purposes of an FMLA retaliation claim. *Id.* at 883-88. Because the language of the anti-retaliation provisions in the FMLA is much the same as Title VII, the ADA, and the ADEA, the court looked to cases involving those statutes for guidance. *Id.* at 883. After a thorough examination of the statutory language and case law, the court agreed that the term "adverse employment action" did not exclude adverse retaliatory actions that are not employment-related. *Id.* at 885 (citing *EEOC v. Outback Steakhouse of Florida, Inc.,* 75 F. Supp. 2d 756, 759 (N.D. Ohio 1999)). The court rejected cases holding to the contrary, which the court observed was the minority view. *Id.* at 884-86.

The *Rosania* Court looked to the two-part test set out by the Supreme Court for discerning sham-litigation. *Id.* at 886 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49 (1993)).

> "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits ... Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit 'conceals an attempt to interfere directly with the business relationship of a competitor.'"

7

*Id.* at 886 (quoting *Prof'l Real Estate Investors*, 508 U.S. at 60-61).

Taco Bell asserted that Rosania's proposed retaliation claim did not satisfy either prong of the above test and was futile. *Id.* at 887. However, the court stated that Taco Bell was premature in maintaining that its counterclaims were objectively reasonable merely because Ohio law authorizes such claims. *Id.* The court held that Rosania's proposed retaliation claim was neither barred nor made futile by "'the litigation privilege—a doctrine that simply precludes actions taken in the adversarial setting of litigation and otherwise redressable through court process from supporting further litigation.'" *Id.* at 888-89 (quoting *Probst v. Ashcroft,* 25 F. App'x 469, 471 (7th Cir. 2001)). Accordingly, the court granted Rosania's motion to file an amended complaint. *Id.* at 889.

This Court finds the reasoning in *Rosania* sufficiently persuasive for Plaintiff to maintain his retaliatory counterclaim. It is noteworthy, however, that the question before the court in *Rosania* was whether to grant a motion for leave to file an amended complaint, not what an employer must show in summary judgment proceedings to establish that its counterclaim is brought for legitimate purposes other than retaliation. *Id.* at 888.

There appears to yet be no settled law on the test for deciding whether Plaintiff's retaliatory counterclaim count is legally and factually viable. *See* FITZPATRICK, *Counterclaims and Retaliation, supra*. Regardless of this Court's ultimate decision on the test or legal analysis to be applied, it is clear that at this juncture, Plaintiff's claim for "retaliatory counterclaim" hinges on disputed issues of fact, including the merits of the counterclaim and whether there was retaliatory animus in filing the counterclaim for overpayment of commissions.

For instance, Defendants rely on an audit of payments to Plaintiff to establish the overpayment of commissions; however, Plaintiff contests the accuracy of the audit and also points to testimony of Mumford and Walkup that they allowed employees to retain additional commissions as an inducement to continue employment with Sir (Pl. Resp. at 19-20, citing Mumford Dep. at 63-64, 82; Walkup Dep. at 23).

Further, the circumstances surrounding the state court lawsuit filed by Plaintiff and two coworkers are also unclear with respect to their bearing on the counterclaim and whether the counterclaim may have been retaliatory. Plaintiff contends that Defendants did not assert a counterclaim against either of the other two salespersons involved in the state court action, and moreover, there was no counterclaim filed against Plaintiff in the state court action, in which the payment of commissions was directly at issue. The evidence supporting Plaintiff's assertions is sufficient to survive Defendants' motion.

Given the numerous disputed factual matters, summary judgment on this claim is improper.

### IV. Conclusion

Genuine disputes of material fact exist with respect to the individual liability of Defendant Mumford and with respect to the viability of Plaintiff's claim for "retaliatory counterclaim." Defendants' Motion for partial summary judgment is therefore denied.

An Order consistent with this Opinion will be entered.


DATED: May 25 , 2012                          /s/ Janet T. Neff
                                              JANET T. NEFF
                                              United States District Judge

9